# AFFIDAVIT OF CHRISTOPHER A. HUBBUCH

I, Christopher A. Hubbuch, being duly sworn, hereby state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I have been a Special Agent with the Federal Bureau of Investigation since March 2001. I am currently assigned to the London Resident Agency, within the Louisville Division of the FBI. I have received training from the FBI Academy in Quantico, Virginia, and elsewhere, which covered a variety of investigative programs and techniques, including interviewing, report writing, and an overview of legal statutes and criminal laws. I have personally conducted and assisted in a variety of criminal investigations into violations of federal law, including complex wire fraud schemes.

2. At the FBI, I conduct criminal investigations, make arrests, and execute search and seizure warrants for violations of federal law. As such, I am a federal law enforcement officer authorized to investigate violations of federal law and to apply for and execute warrants issued under the authority of the United States. I have more than ten (10) years of experience involving investigation of complex financial fraud matters involving the use of wire communications in interstate commerce.

3. The information contained in this Affidavit is either personally known to me, based upon witness interviews, from my review of records and publicly available information, or has been relayed to me by other agents, sworn law enforcement personnel, or personnel experienced in fraud. Because this Affidavit is being submitted for the limited purpose of setting forth a reasonable belief that the real property named in the Verified Complaint is subject to forfeiture to the United States, I have not included

each and every fact known to me concerning the investigation. I have set forth only those facts that I believe are necessary to establish a reasonable belief that the property is subject to forfeiture.

4. Based on my training and experience, and the facts as set forth in this affidavit, I respectfully submit that there is reason to believe that violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1349 (wire fraud conspiracy) and 18 U.S.C. § 1956 (money laundering) have been committed by the individuals referred to in this affidavit and companies owned, operated and/or managed by them.

5. This affidavit is submitted in support of the civil forfeiture complaint filed against the real property known as 403 Tennessee Avenue, Pineville, Bell County, Kentucky, in the name of Old House Holdings, LLC.

6. Based on the information developed during the investigation and detailed in this affidavit, and based on my training and experience, I submit that there is reason to believe that the above-identified property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and (C) because it is property involved in a money laundering offense or constitutes or is derived from proceeds traceable to offenses constituting "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7),[1] or a conspiracy to commit such offenses.

---

[1] Wire fraud (18 U.S.C. § 1343) and conspiracy to commit wire fraud (18 U.S.C. § 1349) are specified unlawful activities as defined in 18 U.S.C. § 1956(c)(7)(A).

2

## OVERVIEW OF THE INVESTIGATION AND BASIS FOR FORFEITURE

*Wire Fraud and Money Laundering*

7. On or about November 22, 2019, I was contacted regarding allegations of wire fraud and possible tax fraud involving Rex G. Fought, through businesses Rockhampton Energy (Rockhampton), Catalyst Resources (Catalyst), and Covol Fuels No. 3 (Covol). Rockhampton was the contract mining company for Catalyst at a coal mine near Pineville, Kentucky, in the Eastern District of Kentucky. Covol was the wash plant for the coal produced at the mine. Catalyst funded the operations of Rockhampton and Covol. An individual identified herein as Confidential Informant 1 ("CI 1")[2] had made these allegations to law enforcement.

8. According to CI 1, from as early as 2014, up until October 2019, Rex Fought worked with others to embezzle millions of dollars of investor and lender funds, sales proceeds, and pre-paid state reclamation bonds collectively belonging to Catalyst, Rockhampton, and Covol for the personal benefit of Fought, the financial controller of the companies, M.M., and A.M., an associate.

9. According to CI 1, at the direction of Fought, M.M. wrote weekly $2,000 checks to Fought and himself out of a Catalyst bank account at First State Financial for "supplies." Both knew this money was not for supplies, and they converted it for their

---

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

own use. In 2015, M.M. began taking as much as $5,000 per week. By 2019, M.M. moved $15,000 per month out of the accounts to Fought and A.M. M.M. also funneled money to Ruth Miller, Fought's romantic partner. Bank records confirm at least $10,000 per month was being provided to Ruth Miller's accounts by wire transfers and checks from Rockhampton. Specifically, one of Ruth Miller's bank accounts at Hometown Bank was receiving approximately $8,400 per month in direct wires from Rockhampton, and another Ruth Miller account at First State Bank was receiving approximately $2,300 per month in purported salary checks from Rockhampton. From interviews of employees, Ruth Miller was not an actual employee of Rockhampton but was receiving a salary as such.

10. According to CI 1, M.M. laundered embezzled funds from Catalyst to himself, Fought, and A.M. by frequent transfers to accounts belonging to the other business entities they controlled (Rockhampton and Covol). M.M. had set up additional entities, including J Star Enterprises and SBJ Leasing, for the purpose of embezzling and diverting investor and lender funds. At the direction of Fought, M.M. would transfer or wire funds from Rockhampton and Covol to the bank accounts of J Star Enterprises and SBJ Leasing. Fought was officially paid a salary by Catalyst of about $15,000 per month through his company, KT Consulting.

11. CI 1 has informed me that several cash reclamation bonds submitted to the Commonwealth of Kentucky in the name of Covol were returned to Covol in 2017 and 2018 and were diverted at the direction of Fought to purchase and fund the renovation of the real property located at 403 Tennessee Avenue, Pineville, Kentucky. From my

4

investigation, I have learned that coal mining and production operations such as Rockhampton and Covol are required to submit reclamation bonds to the Commonwealth of Kentucky for each operating permit they have with the state. When those permits expire, any cash bonds put forth are returned to the permit holder. That money should have been used for the benefit of Covol and Catalyst.

12. According to CI 1, the largest single investor, Edward Green, had invested about $15 million into Catalyst in the beginning of the operation and another $17 million at a later date. Another major Catalyst investor was Carolina Capital/Carolina Financial Group ("Carolina Capital"), which was comprised of a group of investors.

13. CI 1 explained that M.M. and Fought created fake external accounting books and audit documents for Rockhampton. I have reviewed emails collected during this investigation and confirmed the doctored accounting statements and audit documents were provided to Green and the investors and lenders associated with Carolina Capital. These financial statements were provided as monthly updates to investors and lenders and used, in part, to induce additional loans and investments.

14. Despite representations from Fought to the contrary, according to CI 1, the Catalyst mine at Pineville was never profitable. Even so, while Catalyst was accruing debt, M.M. and Fought were embezzling funds for their own personal use and for the personal use of A.M., while knowingly misrepresenting the true financial status of Catalyst and never disclosing these misappropriated funds to lenders or investors.

*Probable Cause for Forfeiture of the Real Property*

15. During the conduct of the investigation, I learned that mine proceeds and investor and lender funds which were wire transferred into the bank accounts of Catalyst, were illegally diverted to purchase, renovate, and maintain real property—namely, a single-family dwelling, located at 403 Tennessee Avenue, Pineville, Kentucky ("the Real Property")—in about July 2018 and continuing into late 2019. According to CI 1, funds from Catalyst, through Rockhampton and Covol, were used to purchase and renovate the Real Property for the benefit of Fought and Ruth Miller under the entity name of Old House Holdings, LLC.

16. Old House Holdings was originally organized in Delaware (Organization Number 1021325) in October 2014 in the name of Ruth A. Miller as a Kentucky foreign limited liability company. Another Old House Holdings (Organization Number 1156035) was then incorporated in Delaware on or about May 5, 2018, in the name of Ruth A. Miller as a Kentucky foreign limited liability company at address 403 Tennessee Avenue, Pineville, Kentucky. M.M. was the registered agent for both entities.

17. According to Bell County, Kentucky, property records, on or about July 5, 2018, Old House Holdings acquired the Real Property for $125,000. The purchase transaction was conducted by attorney C. Bishop Johnson at Pineville, Kentucky. M.M. signed the deed for Old House Holdings. On or about January 6, 2020, Ruth Miller and Rex Fought signed a mortgage against the Real Property for the purposes of securing a $15,000 loan.

18. I have conducted limited surveillance at the Real Property at multiple times over the last several years. At most times, a vehicle registered to Fought was observed parked at the residence. Further, an IRS-CID Special Agent and I attempted to locate and interview Ruth Miller at the Real Property and left a business card on the front door. Ruth Miller soon telephonically contacted the IRS-CID Special Agent based on that business card. Therefore, I believe Ruth Miller and Rex Fought were living at the Real Property, which is currently listed for sale.

19. *Purchasing the Real Property.* I subpoenaed records from Cawood and Johnson, PLLC, regarding Old House Holdings' purchase of the Real Property. The closing statement for the property indicated that $204,200 in checks were deposited into the IOLTA account belonging to Cawood & Johnson, PLLC. Cawood & Johnson, PLLC records showed that the $204,200 initially deposited into their IOLTA escrow account on June 1, 2018, consisted of three (3) checks from the Commonwealth of Kentucky payable to Covol and three (3) Community Trust Bank checks from Rockhampton Energy, all signed over to Cawood and Johnson. Based on information provided in the preceding paragraphs, there is probable cause to believe that the three checks from Rockhampton Energy were proceeds of the wire fraud conducted on Rockhampton/Catalyst, and their investors and lenders. The descriptions of the checks on the deposit ticket support that the three checks from the Commonwealth of Kentucky derived from Covol reclamation bonds returned from the Commonwealth of Kentucky, which should have gone to the benefit of Covol. Thus, there is probable cause to believe that the checks from the

7

Commonwealth of Kentucky deposited into the Cawood and Johnson IOLTA account were the proceeds of fraud conducted on Covol/Catalyst, and their investors and lenders.

20. *Improvements to the Real Property.* After purchase of the property and associated fees, the remaining funds in the IOLTA escrow account were returned by check to Old House Holdings/Black Bear Development[3] in the amount of $76,439.65. From bank records I have personally reviewed, this check was deposited into the First State Bank account of Old House Holdings on or about July 25, 2018. From my review of bank records, the returned escrow funds were used to renovate the Real Property to the personal benefit of Rex Fought and Ruth Miller. Examples are as follows:

   a. On or about August 18, 2018, Check Number 1001 in the amount of $14,030 was debited from the Old House Holdings bank account, payable to "Brumbach's, Inc." From my research, Brumbach's, Inc. is a cabinet and countertop supplier in Middlesboro, Kentucky.

   b. On or about October 15, 2018, Check Number 1027 in the amount of $12,000 was debited from the Old House Holdings bank account, made payable to Brumbach's, Inc.

   c. On or about November 9, 2018, Check Number 1029 was debited from the Old House Holdings bank account, made payable to "SEKY Wood." From my research, I believe SEKY Wood is Southeast Kentucky Wood Products in Corbin, Kentucky, which is a cabinet maker and supplier.

---

[3] At this time, I am not certain of Black Bear Development's role in the transaction.

8

d. Checks and debits from the account to Lowe's (a home improvement store), the Home Depot, and utility companies such as KU (Kentucky Utilities) and Pineville Utility were deducted from the Old House Holdings bank account after the IOLTA account deposit and prior to December 2018.

21. Later, on or about December 17, 2018, a cashier's check from Rockhampton's Community Trust Bank account in the amount of $99,947.21 made payable from Rockhampton Energy to Rockhampton Energy was deposited into the Old House Holdings bank account at First State Bank. I subpoenaed the records associated with the Community Trust Bank cashier's check and learned that the funds were derived from cashing in three (3) certificates of deposit on behalf of Rockhampton. From my review of bank records, I believe the funds from the cashier's check were used to renovate the Real Property to the personal benefit of Rex Fought and Ruth Miller. Examples of such payments are as follows:

   a. On or about February 13, 2019, Check Number 1005 was debited from the account in the amount of $5,948, made payable to "SEKY Wood."

   b. On or about April 1, 2019, Check Number 1010 made payable to "Knoxville Wholesale Furniture" was debited from the account in the amount of $19,360.62. I believe this was to purchase furniture for the Real Property.

   c. On or about April 1, 2019, Check Number 1014 was debited from the account in the amount of $18,295.62, made payable to "Millard Napier." Check Number 1022 in the amount of $22,935.46, made payable to

9

"Millard Napier" was debited from the account on or about September 10, 2019. From research, Millard Napier is an electrician in Pineville, Kentucky. I believe Napier performed electrical and possibly other construction work at the Real Property.

d. From December 2018 to October/November 2019, debits from the account to KU and Pineville Utility continued until the funds in the Old House Holdings bank account were depleted and the account was later closed.

22. According to recent research of property tax record filings from Bell County, Kentucky, Old House Holdings may currently owe a total of approximately $5,500 in delinquent property taxes for 2019 and 2020.

23. From my investigation, I have no information that suggests that investors or lenders to Catalyst and its associated operating entities had knowledge that funds were being used to purchase, renovate, and maintain a personal residence, office, or investment property at the Real Property. Thus, all funds transferred and used to purchase and renovate the Real Property were the proceeds of a fraud on the Catalyst investors.

24. Because these fraud proceeds were used to purchase, renovate, and maintain the Real Property for the personal benefit of Rex Fought, Ruth Miller, and possibly others, without the knowledge, agreement, or consent of Catalyst investors and lenders, the Real Property is subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

## CONCLUSION

25. Based on the facts outlined above, there is probable cause to believe that the Real Property is subject to forfeiture as property involved in a money laundering offense, in violation of 18 U.S.C. § 1956, and/or as property constituting or derived from proceeds traceable to wire fraud, in violation of 18 U.S.C. § 1343, or conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. Consequently, the Real Property is subject to civil forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

I declare under penalty of perjury, as provided by federal law, that the foregoing statements are true.

Further, your affiant sayeth naught, on this the 23 day of March, 2022.

_____
Christopher A. Hubbuch
Federal Bureau of Investigation